## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| JOHN FENTON WHEELER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 02-604 (RMC) |
| | ) | |
| UNITED STATES DEPARTMENT OF JUSTICE, | ) ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM OPINION

After the Court granted summary judgment to the Department of Justice ("DOJ") on all but two issues in this FOIA/PA[1] case, the parties filed renewed cross motions for summary judgment on the remaining issues. Plaintiff John Fenton Wheeler argues that DOJ, through its constituent agency the Federal Bureau of Investigation, still fails to satisfy its obligations under FOIA. The Court disagrees and will grant summary judgment to DOJ.

## I. BACKGROUND FACTS

This is the Court's third occasion to issue an opinion in this case. The Central Intelligence Agency and DOJ were both originally named defendants. The CIA filed a motion for summary judgment on October 16, 2002, which the Court granted on June 4, 2003. *Wheeler v. CIA*, No. 02-cv-0604 (RMC), Mem. Op. & Order (D.D.C. June 4, 2003) (Dkt. Nos. 41 and 42). Parallel allegations against the FBI were not fully briefed until June 5, 2005, and the Court granted partial

---

[1] Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 and the Privacy Act ("PA"), 5 U.S.C. § 552a.

summary judgment to DOJ on September 30, 2005. *Wheeler v. Dep't of Justice*, 02-cv-0604 (RMC) Mem. Op. (D.D.C. Sept. 30, 2005) (Dkt. # 83). The Court will only summarize the background to this litigation and presumes familiarity with its previous memorandum opinions.

John Fenton Wheeler is a retired journalist who had extensive experience reporting from countries where Spanish is the native language. He is contemplating writing a book about his career. On September 8, 1969, Mr. Wheeler was expelled from Cuba allegedly because of his stories for the Associated Press concerning a Mexican embassy worker who was accused by the Cuban government of being a spy for the United States. Mr. Wheeler later learned, through testimony from a Cuban defector before the U.S. Senate, that President Castro had been interested in learning whether Mr. Wheeler was a spy for the CIA or had been co-opted by the CIA.

Mr. Wheeler submitted a FOIA/PA request to the FBI on June 18, 2001 seeking records concerning himself. As pertinent to the instant motions for summary judgment, he sought records concerning himself maintained in the FBI "109 files on Cuba . . . Spain and Portugal . . . and Peru" for specified time periods. Mr. Wheeler also sought worksheets and search slips used in processing his request. 1st Kiefer Decl., Ex. A at 1-2. The FBI eventually provided Mr. Wheeler with some documents responsive to his request. Important to the instant motions, it informed him that its search located no 109 files or "search worksheets"; but it did locate six search slips, which were provided to Mr. Wheeler with some redactions.

Based on its position that it had complied with FOIA, DOJ moved for summary judgment. The Court granted DOJ's motion in part, but denied the motion without prejudice with respect to two issues: first, it was unclear from the record whether the FBI had searched the 109 files, as requested; and second, there was no response to Mr. Wheeler's assertion that the FBI did not

release its "search worksheets," as requested.  Both parties thereafter renewed their cross motions

for summary judgment on those two issues, and Mr. Wheeler raised two additional issues — that one

of the redactions to the search slips was not justified under FOIA Exemption 1, and that the Court

should vacate that part of its September 30, 2005 Memorandum Opinion and Order which pertained

to the adequacy of the FBI search and grant limited discovery on that issue.  By minute order entered

on August 25, 2006, the Court ordered DOJ to respond specifically to Mr. Wheeler's assertion that

"worksheets" and "search slips" are different kinds of documents.  That response having now been

filed, the matter is again ripe for decision.

## II. LEGAL STANDARDS

### A.      FOIA

FOIA requires agencies of the federal government to release records to the public

upon request, unless one of nine statutory exemptions applies.  *See NLRB v. Sears, Roebuck & Co.*,

421 U.S. 132, 136 (1975).  "[D]isclosure, not secrecy, is the dominant purpose of the Act."  *Dep't

of the Air Force v. Rose*, 425 U.S. 352, 361 (1976); *DOI v. Klamath Water Users Protective Ass'n*,

532 U.S. 1, 8 (2001).  Because this case arises under FOIA, the Court has subject matter jurisdiction

pursuant to 28 U.S.C. § 1331.  *See Sweetland v. Walters*, 60 F.3d 852, 855 (D.C. Cir. 1995).  And

because his request for information under FOIA was denied, at least in part, Mr. Wheeler has

standing to sue.  *See Zivotofsky v. Sec'y of State*, 444 F.3d 614, 617 (D.C. Cir. 2006) ("Anyone

whose request for specific information [under FOIA] has been denied has standing to bring an

action").

Classified information that has been properly designated as secret is exempt from

disclosure under FOIA Exemption 1.  *See* 5 U.S.C. § 552(b)(1).  This exemption protects

information that is "specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and . . . [is] in fact properly classified pursuant to such Executive order[.]" *Id.* Sections 1.5(c) and 1.5(d) of Executive Order ("E.O.") 12,958 authorize the classification of information that concerns intelligence activities, sources, methods, or foreign relations. *See* E.O. No. 12,958, 60 Fed. Reg 19, 825 (April 17, 1995). Pursuant to section 1.2(a)(4) of the E.O., information in these categories may be classified when the appropriate original classification authority determines that unauthorized disclosure reasonably could be expected to cause damage to national security in a manner that the classification authority is able to identify and describe. The government may satisfy its burden of justifying non-disclosure through the submission of agency declarations of sufficient detail to describe the withheld material with reasonable specificity and the reasons for non-disclosure. *U. S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 753 (1989).

B.    **Summary Judgment**

Summary judgment is the routine method for resolving most FOIA actions when there are no material facts genuinely at issue. *See Alyeska Pipeline Serv. Co. v. EPA*, 856 F.2d 309, 313-14 (D.C. Cir. 1988); *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981). The standard is well known: under Rule 56 of the Federal Rules of Civil Procedure, summary judgment must be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C. Cir. 1995). To determine which facts are

"material," a court must look to the substantive law on which each claim rests. *Anderson*, 477 U.S. at 248. A "genuine issue" is one whose resolution could establish an element of a claim or defense and therefore affect the outcome of the action. *Celotex*, 477 U.S. at 322; *Anderson*, 477 U.S. at 248. Thus, "[a] party opposing a motion for summary judgment must point to more than just 'a scintilla of evidence' supporting his position; 'there must be evidence on which the jury could reasonably find for the plaintiff.'" *Ben-Kotel v. Howard Univ.*, 319 F.3d 532, 536 (D.C. Cir. 2003) (quoting *Anderson*, 477 U.S. at 252). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50.

"In a suit brought to compel production [of records], an agency is entitled to summary judgment if no material facts are in dispute and if it demonstrates 'that each document that falls within the class requested either has been produced . . . or is wholly exempt from [FOIA's] inspection requirements.'" *Students Against Genocide v. Dep't of State*, 257 F.3d 828, 833 (D.C. Cir. 2001) (quoting *Goland v. CIA*, 607 F.2d 339, 352 (D.C. Cir. 1978)). A district court conducts a *de novo* review of an agency's determination to withhold information under FOIA. *See* 5 U.S.C. § 552(a)(4)(B); 5 U.S.C. § 552a (g)(3)(A). It is the agency opposing disclosure of the information under FOIA that bears the burden of establishing that a claimed exemption applies. *See, e.g.*, *Assassination Archives & Research Ctr. v. CIA*, 334 F.3d 55, 57 (D.C. Cir. 2003). "Summary judgment is warranted on the basis of agency affidavits when the affidavits describe 'the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.'" *Miller v. Casey*, 730 F.2d 773, 776 (D.C. Cir. 1984) (quoting *Military Audit Project*, 656 F.2d at 738).

## III.  ANALYSIS

As described in earlier decisions in this case, the FBI maintains a Central Records System ("CRS") that contains all the information it has acquired for law enforcement purposes.  *See* 2nd Hardy Decl. ¶ 7.  The CRS consists of a numerical sequence of files broken down according to subject matter, which may relate to an individual, organization, company, publication, activity, or foreign intelligence matter.  *Id.*  When a case is opened, it is assigned a Universal Case File Number ("UCFN") that is used by all FBI field offices, Legats, and FBI Headquarters ("FBIHQ").  *Id.* ¶ 8.  The UCFN is made up of a series of numbers and letters that signify different information relating to the file.  For instance, files that have the prefix "109" relate to Foreign Political Matters.  Thus, Mr. Wheeler's request that the FBI search all "109 files" was a request that the FBI look in the CRS for case files that include reference to Mr. Wheeler and that contain intelligence information compiled in connection with FBI investigations into Foreign Political Matters.  Mr. Wheeler also requested that the FBI turn over "search slips," which are internal documents created after receipt of a FOIA/PA request to assist in the identification of responsive records, *id.* ¶ 10, and "worksheets" related to this FOIA request.

In response to Mr. Wheeler's request, the FBI conducted a search of the CRS and found no 109 files pertaining to him.  2nd Hardy Decl. ¶ 9.  FBIHQ located six search slips, which were processed and released with redactions.  *Id.* ¶ 11.  A search for inventory "worksheets" produced no such records. 3rd Hardy Decl. ¶ 8.  Thus, there are three questions to be resolved arising in the pending cross-motions for summary judgment: (1) did the FBI adequately search its 109 files; (2) was a single redaction on a search slip justified under FOIA Exemption 1; and (3) was the FBI's failure to produce worksheets reasonable.  The Court answers all three questions in the affirmative.

A.     **The 109 Files**

In its September 30, 2005 Memorandum Opinion, this Court found the FBI's search to be adequate but denied summary judgment as to the 109 files because it was unclear whether those files were actually searched.   The FBI has now made clear that it did search for relevant 109 files, but no such files were located.  2nd Hardy Decl. ¶ 9.  Mr. Wheeler has taken this as an opportunity to relitigate the reasonableness of the FBI's search; he challenges the truthfulness of the FBI's representation that it searched but found no 109 files pertaining to him and asks for leave to conduct discovery regarding the details of the search.  Pl.'s Opp. Mem. at 5-8.  His challenges are based primarily on information, or the lack of information, reflected on the previously released search slips that the FBI generated in connection with its searches for 109 files.  *Id.*  The Court finds Mr. Wheeler's arguments to be without merit and therefore declines to alter its previous conclusion that the search was reasonable.  And because DOJ conducted a reasonable search for 109 files, it is entitled to summary judgment on the reasonableness of the search.

Mr. Wheeler disagrees.  First, he argues that the search slips indicate that the FBI waited over a year after receiving his FOIA request before beginning the search.  *Id.* at 5.  Mr. Wheeler claims that this is contrary to what the FBI "normally" does upon receiving a FOIA request and, as a result, one must doubt the adequacy of the search.  *Id.*  The primary problem with this argument is that Mr. Wheeler provides no evidence regarding what the FBI "normally" does when it receives FOIA requests; his argument is nothing more than counsel's *ipse dixit*.  Moreover, Mr. Wheeler fails to explain how this alleged delay impugns the adequacy or reasonableness of the FBI's search.  This argument does not create a genuine issue of material fact with respect to the reasonableness of the FBI's search for 109 files.

Second, Mr. Wheeler contends that, based on the search slips, it appears that the FBI searched only the 109 files at FBIHQ; it did not search files located at its Legats in Cuba, Portugal, Spain, or Peru. *Id.* at 6-7. Mr. Wheeler's FOIA request did not ask the FBI to search files located in those foreign offices — it asked only that the FBI search "109 files on Cuba . . . Spain and Portugal . . . and Peru." 1st Kiefer Decl. Ex. A at 1-2. The FBI did search its 109 files related to those countries, and it found no responsive documents. *See* 2nd Hardy Decl. ¶ 9. Mr. Wheeler offers no explanation for why "a search of the indicies of these field offices must be performed" in order for the search of 109 files to be reasonable. Pl.'s Opp. Mem. at 6. The FBI searched the requested files. The search was, by Mr. Wheeler's own definition, reasonable. *See Miller v. Dep't of State*, 779 F.2d 1378, 1383 (8th Cir. 1985) (a FOIA search "need only be reasonable; it does not have to be exhaustive.").

Third, Mr. Wheeler complains that the FBI failed to search based on every possible variant of his name. Pl.'s Opp. Mem. at 6-7. This issue has already been decided against Mr. Wheeler, and he presents nothing new. *See Wheeler v. U.S. Dep't of Justice*, Case No. 02-604 (RMC), Mem. Op. at 14-15 (D.D.C. Sept. 30, 2005). As previously found, the FBI's search turned up records that show various formulations of Mr. Wheeler's name. *See id.*

Fourth, Mr. Wheeler contends that one of the search slips states, "add'l records not listed," which indicates that "there are other records possibly responsive to Wheeler's requests which were not retrieved and processed." Pl.'s Opp. Mem. at 7. Mr. Wheeler also argues that a "comparison of the file references listed on the search slips with the records that have been provided . . . indicates that approximately 50 references listed on the six [s]earch slips were not released." *Id.* Mr. Wheeler's belief that additional responsive files may exist that were not released is contradicted

-8-

by the detailed declarations submitted by the FBI, which state that no 109 files were located and all

other responsive documents were provided.  *See* 2nd Hardy Decl. ¶ 9; 1st Kiefer Decl. ¶ 5 and Ex.

A.  The fact that the search slips reference other files that were not produced "does not establish the

existence of documents that are relevant to [Mr. Wheeler's] FOIA request."  *Steinberg v. U.S. Dep't*

*of Justice*, 23 F.3d 548, 552 (D.C. Cir. 1994).  In other words, the mere fact that other files were

referenced or examined during the search does not mean that those files are responsive to Mr.

Wheeler's request.  *See id.*  Without some evidence indicating that those files may indeed contain

responsive materials, Mr. Wheeler cannot overcome the FBI's affidavits.  *See Miller*, 730 F.2d at

776.

Finally, Mr. Wheeler says that the FBI's representation that it located no 109 files is

clearly inaccurate because the search slips expressly refer to 109 files.  Pl.'s Opp. Mem. at 8.  Mr.

Wheeler is surely correct that the search slips list some 109 files.  *See* 2nd Hardy Decl. Ex. A at S-5

& S-6.  But again, the FBI's declarants have represented that there are no responsive 109 files.  *See*

*id.* ¶ 9.  And the mere reference to those files in the search slips does not mean that they are

responsive to Mr. Wheeler's request; it means only that they were examined during the search.  *Cf.*

*Steinberg*, 23 F.3d at 552.  Mr. Wheeler makes no credible claim of impropriety by the FBI.

Although this may technically be a "disputed" fact, the Court does not find it to be sufficiently

material to preclude summary judgment.  Because the record contains no disputed issue of material

fact regarding the reasonableness or adequacy of the FBI's search for 109 files, the Court will grant

summary judgment to DOJ.

B.      **Redaction to Search Slips**

In addition to the adequacy of the search itself, Mr. Wheeler challenges the redaction of a file number that the FBI made to one of the search slips.[2]  The FBI withheld the file number under FOIA Exemption 1, claiming that its disclosure "could reasonably be expected to cause serious damage to the national security and its withholding outweigh[s] the public benefit of disclosure." 2nd Hardy Decl. ¶ 22.  The FBI elaborated that the file number in question is "one control number for an intelligence activity used for the gathering of information," and its disclosure allegedly "could jeopardize current and future operations."  *Id.* ¶ 20.  According to the FBI, "[t]his file number has never been publicly revealed and, if disclosed, would reveal the application of the specific intelligence activity."  *Id.*

Mr. Wheeler questions the accuracy of these statements and believes he should be allowed to take discovery on whether the file number and/or intelligence technique is currently being utilized.  Pl.'s Opp. Mem. at 10.  In particular, Mr. Wheeler finds it inherently doubtful that the disclosure of a file number alone would compromise national security.  *Id.*  Mr. Wheeler also argues that the FBI could reasonably segregate some of the information in the file number it has withheld: he suggests the initial part of the number indicating the investigational category and the component indicating whether the file is associated with FBIHQ or a particular field office or legat could be disclosed.  *See id.* at 11-12.

Mr. Wheeler's own familiarity with the FBI system demonstrates why the FBI might want to withhold an entire file number when it pertains to a specific intelligence activity — those

---

[2]  Based on FOIA Exemption 6, the FBI also redacted from one search slip the name of an individual who participated in the searches.  2nd Hardy Decl. Ex. A at p. S-1.  Mr. Wheeler does not appear to challenge the propriety of that redaction, so the Court will not address it.

who understand the system could discern important information from the connections between the numbers and letters.  The FBI has provided a detailed declaration supporting its application of Exemption 1.  *See* 2nd Hardy Decl. ¶¶ 15-23.  Although Mr. Wheeler scoffs at the declarant's statements, he fails utterly to controvert those statements, demonstrate bad faith, or offer any other reason why the FBI's determination on national security should be second guessed.  *See Halperin v. CIA*, 629 F.2d 144, 148 (D.C. Cir. 1980) ("If the agency's statements meet this standard, the court is not to conduct a detailed inquiry to decide whether it agrees with the agency's opinions; to do so would violate the principal of affording substantial weight to the expert opinion of the agency.").  The Court accords Mr. Hardy's declarations the credibility to which they are entitled.  Release of the file number could jeopardize a specific intelligence activity and it is not possible to segregate the number and release a portion of it for the same reason.  Mr. Wheeler's speculations notwithstanding,[3] the FBI has explained its application of Exemption 1 and there is no call for discovery.

## C.     Worksheets

Mr. Wheeler's final argument is that the FBI failed to produce worksheets, which he specifically requested in his FOIA request.  This argument need not detain the Court for long.  The FBI has made clear that at one point it created documents known as "inventory worksheets" to summarize FOIA/PA processing decisions for each page in a responsive file.  3rd Hardy Decl. ¶ 7.  But the use of inventory worksheets was discontinued when the FBI converted from manual processing of FOIA documents to an automated system known as the FOIA Document Processing

---

[3] *See* Pl.'s Opp. Mem. at 10-11 ("[H]ave other file numbers which served as 'control numbers' for other 'intelligence activities' ever been released?  If so, what accounts for the fact that some such file numbers have been released and others not?  Did serious damage to national security result from the release of such control file numbers in other instances? . . . [I]t is appropriate that Wheeler be allowed to probe these issues through discovery.").

System.  *Id.*  The FBI discontinued use of inventory worksheets prior to Mr. Wheeler's FOIA/PA

request.  *Id.*  Therefore, there are no worksheets to produce to Mr. Wheeler.

## IV.  CONCLUSION

The Court will grant summary judgment to DOJ on the three outstanding issues,

finding that it conducted a reasonable search of its 109 files without finding any responsive records,

that the redaction of one file number was appropriate under FOIA Exemption 1, and that it could

produce no "worksheets" because none exist.  Mr. Wheeler's cross motion will be denied — the

Court declines to reconsider its determination that the scope of the FBI search was adequate, and

there is no basis to allow discovery into the FBI's application of FOIA Exemption 1 to a single file

number.  A memorializing order accompanies this Memorandum Opinion.

_____/s/_____
ROSEMARY M. COLLYER
United States District Judge

DATE:  November 21, 2006